IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-02639-MSK-CBS

SHERRY L. DERAY, as Personal Representative of the Estate of John R. Winkler,

        Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO;
RICHARD MYERS;
RONALD SHEPPARD;
CARLOS SANDOVAL; and
JOHN HAVENAR,

        Defendants.

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

---

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss **(#5)**, to

which the Plaintiff Sherry L. DeRay, as Personal Representative for the Estate of John R.

Winkler (the "Estate")[1], responded **(#7)**, and the Defendants replied **(#15)**.  Having considered

the same, the Court **FINDS** and **CONCLUDES** the following.

### I.  Background

This case arises out of the arrest and suicide of John R. Winkler.  His Estate is the

Plaintiff in this action.  In accordance with 42 U.S.C. § 1983, the Estate asserts claims for

violation of Mr. Winkler's Fourth, Eighth, and Fourteenth Amendment rights and a state law

---

[1]Ms. DeRay originally filed this case in her personal capacity but was thereafter
permitted to amend the Complaint to assert the claims in a representative capacity. #**20**.  The
portion of the Defendants' motion addressing Ms. DeRay's standing to assert the decedent's
claims were deemed withdrawn and are not addressed in this order.  *Id.*

negligence claim.  The claims are asserted against the arresting officers,[2] their supervisors, and

the City of Colorado Springs, Colorado (the "City").  The claims are asserted against the City

pursuant to *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978), alleging that the City had a

custom or policy of inadequately training and supervisors with regard to the appropriate use of

force and as to proper procedures for transporting detainees.  The Defendants move for dismissal

of all claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.  Material Facts

Construing the Estate's allegations most favorably to it, the Complaint (**#1**) alleges the

following facts.

Mr. Winkler was arrested upon a routine warrant on October 12, 2010 by Defendants

Carlos Sandoval and John Havenar (the "Arresting Officers"), employed by the City of Colorado

Springs, Colorado Police Department ("CSPD").  The Estate alleges that in effecting the arrest,

the Arresting Officers used excessive force, slamming Mr. Winkler into a parked car, and

kicking him on the side and back before holding and handcuffing him.

Prior to his arrest, Mr. Winkler's mother warned the Arresting Officers that Mr. Winkler

was emotionally disturbed, depressed and suicidal.  After the arrest, Mr. Winkler was "terrified,

crying hysterically, distraught, devaluing himself and declaring himself to be suicidal, verbally

expressing on multiple occasions that he wanted to die."  Complaint ¶ 5.  The Arresting Officers

---

[2]Although not express, the Court understands the claims to be asserted against the
Officers Sandoval and Havenar in their individual capacities and against Defendants Myers and
Sheppard in their individual and official capacities.  To the extent claims are asserted against
these Defendants in their official capacities, such claims are duplicative of those asserted against
the City of Colorado Springs and are dismissed as redundant.  *Kentucky v. Graham*, 473 U.S.
159, 165-66 (1985).  Therefore, the Court examines the adequacy of the allegations as to the
individual capacity claims and the municipal liability claim.

placed Mr. Winkler in the passenger seat of the police vehicle.  The passenger seat had no

protective prisoner cage and the vehicle either did not have failsafe passenger locks or, if it did,

the officers failed to engage the locks.

The Arresting Officers did not take Mr. Winkler to a mental health screening facility or

otherwise attempt to obtain an evaluation of Mr. Winkler.  Rather, the officers began

transporting Mr. Winkler to the police processing and lockup facility.  While the vehicle was on

an interstate highway and traveling approximately 65 miles per hour, Mr. Winkler jumped from

the vehicle and was killed by traffic in the roadway.

The Estate alleges that the Arresting Officers acted in violation of the CSPD's safe

prisoner transport procedures and violated CSPD procedures and training by failing to take Mr.

Winkler to a mental health facility for screening and assistance.   The Estate further alleges that

the supervisory Defendants, Ronald Sheppard and Chief Richard Myers (the "Supervisory

Officials"), were aware that CSPD officers customarily and routinely violated safety procedures

and training guidelines in transporting prisoners but failed to take any action in this regard.  The

Estate generally asserts that the City and the supervisory Defendants had a custom or policy of

inadequately training and/or supervising officers in transporting detainees.

### III.   Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), the Defendants seek dismissal of all federal claims

and request that the pendent state law claim be dismissed without prejudice for lack of

jurisdiction.

There is a strong presumption against dismissal for failure to state a claim under Rule

12(b)(6).  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999).

However, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

In applying the *Twombly/Iqbal* standard to a motion under Fed. R. Civ. P. 12(b)(6), the Tenth Circuit has held that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Id.* (internal quotation marks and citations omitted). The standard must be applied in a manner consistent with the notice pleading framework set forth in Fed. R. Civ. P. 8(a)(2), which requires only that a complaint give a defendant "fair notice" of the claim and grounds upon which it rests. *Khalik v. United Air*

*Lines*, 671 F.3d 1188 (10th Cir. 2012). The nature and specificity of the allegations required to state a claim will depend on context; moreover, while a plaintiff need not establish a *prima facie* case in the complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.*

## IV.    Analysis

### A.    Elements of a Section 1983 Claim

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." The statute creates no substantive civil rights, only a procedural mechanism for enforcing existing constitutional and other federal rights. *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995). Therefore, to assert a claim under section 1983, a plaintiff must show as a threshold matter (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

However, a claim against an individual officer for an alleged constitutional violation does not automatically result in liability for the officer's supervisors or the governmental entity for which the officer works. *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) (there is no *respondeat superior* liability under § 1983, only liability based on personal involvement in the alleged constitutional violation) (citation omitted). It appears that the Estate bases claims against

the Supervisory Officials and against the City for their alleged inadequate training and supervision of the Arresting Officers.

### 1.    Individual Defendants - Supervisory Liability

When an official is sued under § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must demonstrate not only that a subordinate employee violated her rights but that the supervising official "by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

To state a prima facie case for alleged supervisory liability, the allegations must be sufficient to plausibly give rise to an inference: (1) that the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation. *Id.*, 614 F.3d at 1199.  The state of mind required for supervisory liability is the same as that for the underlying constitutional offense. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("the *mens rea* required of [a supervisor] to be held liable . . . can be no less than the *mens rea* required of anyone else.").

### 2.    Municipal Liability

To impose liability on a municipality for the alleged unconstitutional injury of its employees, a plaintiff must allege facts sufficient to show the existence of a municipal "policy" or "custom" that caused the constitutional injury. *Dodds,* 614 F.3d at 1201-2 (citing *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978)).  In addition, the plaintiff must allege facts that would, if true, show that the city acted with the requisite state of mind in the promulgation of

that policy or custom. *Id.* at 1202. Under well-established principles governing municipal

liability, "deliberate indifference" is also the appropriate standard when a plaintiff asserts that

the alleged custom or policy comprised a failure to act. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th

Cir. 1996) (citation omitted). This means that the need for more or different action was "so

obvious, and the inadequacy so likely to result in the violation of [the plaintiff's due process]

rights, that the policymakers of the [governmental entity] can reasonably be said to have been

deliberately indifferent to the need" for additional action. *Porro*, 624 F.3d at 1328 (quoting

*Jenkins*, 81 F.3d at 994); *see also Barney*, 143 F.3d at 1307 (deliberate indifference may be

demonstrated "when the municipality has actual or constructive notice that its action or failure to

act is substantially certain to result in a constitutional violation, and it consciously or deliberately

chooses to disregard the risk of harm."). A plaintiff does not carry his or her burden by showing

"general deficiencies" but rather must "identify a specific deficiency that was obvious and

closely related to his [or her] injury . . . so that it might fairly be said that the official policy or

custom was both deliberately indifferent to his constitutional rights and the moving force behind

his injury." *Porro*, 624 F.3d at 1328 (citations and internal punctuation omitted).

The Defendants contend that the Estate's section 1983 claims fail for the following

reasons: (1) as to the Arresting Officers because the facts are insufficient to plausibly allege an

underlying constitutional violation; (2) as to the Supervisory Officials because no facts are

alleged that would show their personal participation in any constitutional violation, and, (3) as to

the City, because the Complaint fails to allege facts that would show that a City custom or policy

caused the deprivation of Mr. Winkler's constitutional rights. The Court will therefore examine

each asserted constitutional violation and determine whether the facts are sufficient to state a

claim for liability against each subgroup of Defendants.

**B.     Fourth Amendment**

The Estate alleges that the Arresting Officers used excessive force in effecting the arrest

of Mr. Winkler in violation of Mr. Winkler's Fourth Amendment right to be free of unreasonable

searches and seizures.  Such claims are resolved under an "objective reasonableness standard,"

which means "the question is whether the officers' actions are 'objectively reasonable' in light of

the facts and circumstances confronting them, without regard to their underlying intent or

motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In determining whether the use of

force is reasonable in a particular situation, a court must consider (1) the severity of the crime at

issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others,

and (3) whether he is actively resisting arrest or attempting to flee.  *Id*. at 396.

**1.     Arresting Officers**

The Complaint alleges that the Arresting Officers arrested Mr. Winkler on a warrant, not

in the course of or immediately following the commission of a serious crime.  In addition, the

Estate alleges that the Arresting Officers slammed Mr. Winkler into a parked car and kicked him

on the side and back.[3]  There are no alleged facts that would indicate that Mr. Winkler posed any

threat or resisted arrest or attempted to flee.  Therefore, giving the Estate the benefit of all

favorable inferences, the facts alleged plausibly give rise to an inference that the amount f force

used in effecting the arrest was not objectively reasonable.

_____

[3]The Defendants contend that the Complaint should be dismissed because it does not
sufficiently identify which officer was responsible for which action.  The Court concludes that
the allegations give adequate notice to the Arresting Officers of the conduct at issue and the
nature of the claims and dismissal is not appropriate on this basis.

### 2. Supervisory Officials

In order to state a claim against the Supervisory Officials it is not enough to allege that the Arresting Officers used excessive force. Rather, the Estate must allege facts that would plausibly give rise to an inference that these defendants (1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

The Complaint alleges that the Supervisory Officials generally had "decision making authority" and "maintained a policy or custom of inadequate training and/or supervision" and which denied Mr. Winkler of his constitutional rights. However, these assertions are conclusory and are insufficient to establish that the Supervisory Officials were responsible either for development and enforcement of a specific policy regarding the appropriate use of force in making arrests or for failing to train or supervise arresting officers in this regard. In addition, there are no allegations as to personal participation or the individual intent of these defendants. Accordingly, the Fourth Amendment claim asserted against the Supervisory Officials in their individual capacity are dismissed.

### 3. City

The Complaint alleges that the City "maintained a policy or custom of inadequate training and/or supervision" and which denied Mr. Winkler of his constitutional rights. This minimal conclusory allegation, without any other factual allegation connecting the training or supervision to the use of excessive force, is insufficient to state a claim for municipal liability in this regard. Therefore, the Fourth Amendment claim is dismissed as to the City.

9

## C.     Eighth Amendment

The Court understands the Estate's Eighth Amendment claim to be based on the failure of the Arresting Officers to provide Mr. Winkler with immediate mental health care upon his arrest. *Barrie v. Grand County, Utah*, 119 F.3d 862, 866-67 (10th Cir. 1997) ("claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody" as guaranteed by the Eighth Amendment, which applies to pretrial detainees through the due process clause of the Fourteenth Amendment).  However, the Complaint does not allege sufficient facts to make clear exactly how Mr. Winkler was allegedly deprived of medical care by any of the Defendants.  Although the Complaint alleges that the Arresting Officers should have taken Mr. Winkler to a mental health facility rather than to the jail processing center, given that Mr. Winkler committed suicide in transport a different destination would not have prevented the harm.  Therefore, this claim is dismissed without prejudice to amendment of the Complaint.  The Estate may submit an Amended Complaint within ten days of the issuance of this order providing additional facts and legal theory that would be sufficient to allege a deprivation of Mr. Winkler's Eighth Amendment rights.

## D.     Fourteenth Amendment - Due Process

The Estate alleges that the Defendants deprived Mr. Winkler of his "rights and freedom without due process of law."  The Court understands this to be a claim that Mr. Winkler was arbitrarily deprived of his life (or an unspecified liberty interest) in violation of the substantive component of the due process clause of the Fourteenth Amendment.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, § 1. However, the Due Process

Clause, in addition to guaranteeing fair process, "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotation omitted).

It is somewhat unclear on what basis the Estate asserts this claim. The Court presumes that it is based on Mr. Winkler's death. The Arresting Officers did not deprive Mr. Winkler of his life (rather, Mr. Winkler took his own life). However, because Mr. Winkler was in their custody, he was in a "special relationship" that created an obligation to protect him. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). The special relationship doctrine applies "when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (*e.g.* when the individual is a prisoner or involuntarily committed mental patient)." *Id.* (citing *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 199-200 (1989) ("when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being")).

To show a deprivation of a protected interest, here Mr. Winkler's life, in violation of substantive due process protection, a plaintiff must demonstrate that the government officials acted in a manner "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009). "The 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.'" *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006) (citation omitted).

11

Deliberate indifference may shock the judicial conscience depending on the facts and circumstances of the situation and appears to be the standard applied "when actual deliberation is practical." *Green v. Post,* 574 F.3d 1294, 1200-1301 (10th Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)) (deliberate indifference in substantive due process context "encompasses conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff" or someone in the plaintiff's position).

### 1.    Arresting Officers

Because Mr. Winkler was in the custody of the Arresting Officers, the special relationship doctrine may apply here such that the Arresting Officers had a duty to ensure Mr. Winkler's safety from the risk of harm he posed to himself. Given that there is no dispute that Mr. Winkler was deprived of his life, the question is whether that deprivation occurred as a result of conduct by the officers that shocks the conscience. The allegations indicate that the Arresting Officers had some opportunity for deliberation in determining how to transport Mr. Winkler. Therefore, it appears that deliberate indifference sufficient to shock the conscience is the applicable culpable mental state for this claim.

The Estate alleges that Mr. Winkler was exhibiting obvious signs of suicidal impulses at the time of his arrest, including stating that he wanted to die and displaying extreme emotional distress. In addition, the Arresting Officers were told by the decedent's mother that he was depressed and suicidal. These allegations plausibly suggest an extreme risk of very serious harm.

Notwithstanding this knowledge, however, the Arresting Officers took no action to ensure that Mr. Winkler did not harm himself while in their custody. According to the

Complaint, this could have been achieved by using the safety restraints already in the police vehicle, including safety locks and the protective cage.[4] Again, while minimal, these allegations are sufficient to give rise to an inference that the Arresting Officers acted with deliberate indifference to the extreme risk of very serious harm to Mr. Winkler. Therefore, the Due Process claim may proceed as to the Arresting Officers.

### 2. Supervisory Officials

As noted above, the Complaint generally alleges that the Supervisory Officials were responsible for the promulgation of a policy of inadequate training or supervision, without elaboration, that somehow caused the constitutional harm alleged here. However, in addition, the Estate alleges that the Supervisory Officials were aware that CSPD officers "routinely violated safety procedures and training guidelines in transporting prisoners" but failed to stop such violations. Complaint, ¶ 11. Because these allegations provide additional factual support connecting the allegedly inadequate policy to the constitutional violation at issue, and the culpable mental state of the Supervisory Officials, the Complaint adequately states a claim for supervisory liability for the Eighth Amendment violation.

### 3. City

The Complaint plausibly alleges that the Supervisory Officials had final policymaking authority for the City. Because the Complaint adequately alleges that these supervisors were aware that officers were improperly transporting arrestees and failed to act, their actions could

---

[4]The Estate also contends that taking Mr. Winkler to a mental health facility for evaluation could have prevented the harm, but since Mr. Winkler committed suicide during transport, it is not clear from the Complaint how a different destination would have made a difference.

result in liability for the City.  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir.

2010) (a municipal policy or custom may take the form of, *inter alia*, an informal custom

"amoun[ting] to 'a widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well settled as to constitute a custom or usage with the

force of law' " or  "the decisions of employees with final policymaking authority").

       **IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss **(#5)** is

**GRANTED IN PART AND DENIED IN PART**.   The Estate's Fourth Amendment violation

claim pursuant to 42 U.S.C. § 1983 is dismissed against Defendants Richard Myers, Ronald

Sheppard, and the City of Colorado Springs.  The Eighth Amendment claim is dismissed without

prejudice to amendment of the Complaint.  All other claims remain pending.

       Dated this 24th day of May, 2012

                                **BY THE COURT:**

                                *Marcia S. Krieger*
                                _____

                                Marcia S. Krieger
                                United States District Judge